# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

EDWIN TOMLIN,

               **Petitioner,**

v.                                                **Case No.  06-3296-JWL**

DAVID R. MCKUNE, et al.,

               **Respondents.**

## MEMORANDUM & ORDER

Petitioner Edwin Tomlin is currently before this Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2554.  In his petition, Mr. Tomlin alleges that he was denied effective trial and appellate counsel.  After thoroughly reviewing the parties' motions, briefs, and the underlying record, the court finds that the evidence establishes Mr. Tomlin is entitled to relief.  As such, his habeas petition is granted.

## I.      Background

The facts pertinent to this habeas case are largely uncontested and are taken from the Kansas Court of Appeals ("KCOA") decision in *Tomlin v. State*, 35 Kan. App. 2d 398, 130 P.3d 1229 (2006).  Mr. Tomlin was charged with one count of rape and one count of aggravated indecent liberties with his 10 year old stepdaughter.  During its deliberations, the jury sent a note to the judge stating:

> We are hung. 3 for Guilty to Count 1; 3 for Not Guilty to Count 1 or 2 due to reasonable doubt; 6 for Guilty to Lesser Charge of Count 1 and Guilty to Count 2. We reviewed the facts and your instructions. We have discussed how to "compromise" but we all feel very strongly that we must vote what we believe. Also we feel strongly about our Duty to reach a decision for this Trial. To help us break our deadlocks–what can you say or do for us? We want to come to a decision.

The court then gave the jury an *Allen*-type instruction over Mr. Tomlin's objection. After further jury deliberations, Mr. Tomlin moved for a mistrial. Shortly thereafter, the jury sent another note to the court stating:

> We have moved to 11 guilty to Count 1 of the lesser aggravated indecent liberties and 1 Not guilty to Count 1 or Count 2 due to reasonable doubt; we have all agreed to Not Guilty to Count 1 Rape. Since 3 pm today, we have made good progress. However, the one has stated that since we haven't convinced him of his reasonable doubt position he will never change his mind. We are at an impasse. Most of the Jury feels further discussion will not change his mind.

Subsequently, the State also moved for a mistrial. The trial court determined the jury was deadlocked, declared a mistrial, and discharged the jury. Mr. Tomlin then filed a motion for judgment of acquittal arguing that a retrial of the rape charge would subject him to double jeopardy based on the jury's second note indicating that all members agreed he was not guilty of rape. The court denied the motion. Mr. Tomlin was retried and convicted of both counts. He renewed his motion for judgment of acquittal based on double jeopardy grounds which the trial court denied. He was sentenced to 334 months for rape and 51 months for aggravated indecent liberties with a child.

Mr. Tomlin appealed his convictions and the KCOA affirmed, concluding that the trial court did not abuse its discretion in granting the mistrial and denying his motion for judgment

2

of acquittal.  The KCOA further concluded that double jeopardy did not prevent Mr. Tomlin's second trial because the first trial was terminated with Tomlin's consent.

Mr. Tomlin then filed a motion for post-conviction relief pursuant to K.S.A. § 60-1507. He argued that his trial counsel was ineffective for consenting to the mistrial and failing to request that the court publish the jury's note as a verdict on the rape charge at the first trial.  In evaluating this claim, the court concluded that counsel's actions were not objectively unreasonable because partial verdicts were prohibited under Kansas case law.  Since partial verdicts were impermissible, no acquittal was possible on the greater charge of rape when the jury was hung on the lesser included offense.  Counsel's actions were, therefore, reasonable under *Strickland*'s first prong, and Mr. Tomlin's ineffective assistance of trial counsel claim was denied.  *Tomlin*, 35 Kan. App. 2d at 402-03, 130 P.3d at 1233-34; *see also Strickland v. Washington*, 466 U.S. 668, 688 (1984).

The KCOA also addressed Mr. Tomlin's claim that his appellate counsel was ineffective for raising the issue of double jeopardy on direct appeal instead of arguing that the trial court's failure to publish the jury's acquittal amounted to a constitutional error.  *Tomlin* 35 Kan. App. 3d at 404-05, 130 P.3d at 1234-35.  The KCOA rejected this claim as well, concluding that Mr. Tomlin's appellate counsel was not ineffective as Mr. Tomlin failed to demonstrate prejudice because he failed to show that the outcome of the case would have been different but for his counsel's alleged error.

## II.        Ineffective Assistance of Trial Counsel

3

**A.      Whether Counsel's Actions were Objectively Unreasonable Under**
***Strickland's* First Prong**

1.      **Standard of Review**

a.      **Independent and Adequate State Ground**

When a state court decision rests on either procedural or substantive state grounds which are "independent of the federal question and adequate to support the judgment," a federal court may not review the claim. *Lee v. Kemna*, 534 U.S. 362, 375 (2002). To preclude federal review of a claim, the state grounds must be "firmly established and regularly followed state rules." *Id.* at 376. When state decisions do not direct "flawless compliance" with the state law, it is evidence that the state ground is inadequate to block adjudication of a federal claim. *Id.* at 363-64.

While deciding the ineffective assistance claim on the merits under *Strickland*, the KCOA used a state law ground to determine counsel's actions were reasonable. It held that partial verdicts were prohibited in Kansas; thus, it was impossible for the unanimous agreement of not guilty of rape written by the jury to become a final verdict when the jury was hung on the lesser included offense. Jeopardy does not attach without a verdict, so it would have been unavailing for counsel to move to formalize the verdict. The court, therefore, denied Mr. Tomlin's ineffective assistance of trial claim based on state procedural law interpretations and never independently evaluated whether Mr. Tomlin's case presented a "manifest necessity" for mistrial.

4

This Court finds the prohibition on partial verdicts in Kansas is not an independent and adequate state ground. Prior to his habeas appeal, there was no decision in Kansas that specifically disallowed the course of conduct Mr. Tomlin asserts his counsel should have taken—that counsel should have moved for a formal verdict where there was a unanimous decision known by the court before the jury was discharged, at which time the court could have resolved whether the agreement was a temporary compromise or a final agreement. While the KCOA relied on *State v. McKay*, 217 Kan. 11, 535 P.2d 945 (Kan. 1975),[1] a case in which the unanimous agreement was unknown by the court until after the jury was discharged, there is no evidence that the partial verdict rule from this decision has been "regularly followed" or "firmly established." The KCOA in Mr. Tomlin's habeas appeal stated that it would have been "laudable" for counsel to do the quick thinking to move for a judgment of acquittal on the rape charge, indicating that the law was not entirely settled. It further noted that the California case on which *McKay* relied has since been overturned, even though it had not been in Kansas. Also, there is nothing in Kansas statutes that prohibit partial verdicts. Last, the particular issue regarding partial verdicts in a multiple offense context in *McKay* has only been referenced once

---

[1] *McKay* relied on a California case, *People v. Doolittle*, 23 Cal. App. 3d (1972), which was later overruled by *Stone v. Superior Court of San Diego County*, 31 Cal.3d 503 (Cal. 1982). Interestingly, *Stone* distinguished *Doolittle* on this same notion about pre-discharge knowledge of the court: "In [*Doolittle*], the trial judge was given no indication of how the jurors stood until after he had declared a mistrial and discharged the jury. . . . Here, by contrast the foreman twice declared – prior to discharge, in open court, and in the presence of other jurors – that the jury stood firmly and finally 12 to nothing in favor of acquittal of both degrees of murder." *Stone*, 31 Cal. 3d at 513-14.

5

since 1976, showing this is not a rule of law "regularly followed."[2] Accordingly, there is not

independent and adequate state law ground to preclude review, so this court reviews the merits

of Mr. Tomlin's constitutional claim, first discussing the deference that should be given to the

KCOA's decision.

>   **b.     Whether AEDPA Deference Should be Given to the State Court**
>
>   **Decision**

Deference a federal court must give depends on whether the state court addressed the

claim or argument on the merits.  This case provides an interesting scenario.  The KCOA

adjudicated the ineffective assistance of counsel claim on the merits, and it used the *Strickland*

---

[2] While *McKay* has been cited by other cases for the more general notion that there is no former jeopardy when a jury is deadlocked, none of these, including *McKay*, involved a situation in which the decision of the jury was known before it was discharged.  The one time since 1976 that a Kansas court discussed a partial verdict issue similar to that in *McKay*, but still not involving pre-discharge knowledge of the jury, was in *State v. Burns*, 931 P.2d 1258, 23 Kan.App.2d 352 (Kan.App. 1997), which has since been disagreed with by a later Kansas case.  Obviously, the rule pertaining to partial verdicts has not been regularly followed or firmly established.

Furthermore, while the decision came after Mr. Tomlin's case, comparing *Long v. State* to *McKay* demonstrates that Kansas law on partial verdicts is not firmly established. The KCOA first noted that "a unanimous vote did not provide the district court with grounds to declare a mistrial."  87 P.3d 375, 2004 WL 794430, *4 (Kan. App. 2004).  It held that "[i]f the jury had reached a unanimous verdict that Long was not guilty of the Count III rape charge, as intimated by the jury's note, trial counsel might well have been constitutionally ineffective if the attorney made no attempt to obtain a judgment of acquittal on that count or if the attorney failed to object to the subsequent prosecution on that count.  Therefore, *Long* has stated a substantial issue, worthy of an evidentiary hearing."  *Id.* at *5.  While referencing "counts" instead of "offenses," it does show that Kansas courts do recognize partial verdicts to some extent, contrary to its conclusion of an overall prohibition of such in *Tomlin*.

standard required to evaluate that claim.[3]   In deciding that claim, the KCOA had to decide whether Mr. Tomlin's counsel's actions were objectively reasonable in not moving to formalize the verdict.  It decided that partial verdicts were not recognized under state law, so counsel was reasonable because any effort to formalize that verdict would have been futile.

The KCOA primarily relied on *State v. McKay*, 217 Kan. 11, 535 P.2d 945 (Kan. 1975) to determine that Mr. Tomlin's counsel's actions were reasonable under *Strickland*.  The *McKay* court denied a double jeopardy claim but, in doing so, stopped short of discussing whether there was a "manifest necessity" to declare a mistrial.  It concluded there was no acquittal and, consequently, that no jeopardy had attached.  When the jurors were discharged in that case, three stood for conviction of voluntary manslaughter and nine for involuntary manslaughter.  Both were lesser included offenses of the second degree murder charge.   After the jury was discharged, affidavits were obtained from six jurors indicating that during deliberations all jurors had agreed the defendant was not guilty of the second degree murder charge, the greater offense. The Supreme Court of Kansas first noted that defendant was not prejudiced because he was only convicted of manslaughter at the second trial, so the decision was outside cases such as *Green v. United States*, 355 U.S. 184 (1957) or *Benton v. Maryland*, 395 U.S. 784 (1969), where the jeopardy clause prohibited a second prosecution of the greater offense.  It concluded by stating

---

[3] While the ineffective assistance claim was not raised on direct appeal, this does not preclude this Court's review of the habeas claim.  "If a state court decides an issue on the merits, state procedural bars will not preclude federal habeas review." *Hooks v. Ward*, 184 F.3d 1206, 1215 (10th Cir. 1999).  Because Mr. Tomlin's ineffective assistance of trial counsel claim was decided on the merits, there is no waiver of the argument that precludes this Court's review.

7

"an acquittal of the greater charge does not result because the jury may have deemed the evidence insufficient to support that charge unless the jury agrees that he is guilty of a lesser included offense or agrees that he is not guilty of the crime charged, which finding includes a determination that he is not guilty of any included offense." Therefore, a finding of not guilty of a greater offense must also include a finding of not guilty of any included offense to become a final acquittal. Because there was no final verdict, the double jeopardy claim was denied without reaching the issue of whether there was a manifest necessity to declare a mistrial. The KCOA took the same approach in Mr. Tomlin's case, concluding a final verdict was impossible when the jury was hung on at least one of the offenses in the count.

Mr. Tomlin, on the other hand, asserts that counsel's action were not reasonable in light of the Fifth Amendment double jeopardy prohibition, an argument never reached by the KCOA. The merits of an ineffective assistance of counsel claim depend on the merits of the underlying claim, which is a second constitutional claim in Mr. Tomlin's case. *See, e.g.*, *United States v. Payne*, 172 F.3d 880 (10th Cir. 1999) (discussing ineffective assistance of counsel claim based on merits of a double jeopardy argument where defendant argued counsel should have raised the double jeopardy claim); *United States v. Valencia-Martinez*, 153 Fed.Appx. 545, 2005 WL 3008782 (10th Cir. 2005) (denying ineffective assistance claim that "counsel should have challenged the plea agreement and waiver by arguing that the prosecution . . . violated the Double Jeopardy Clause" because the double jeopardy claim was "without merit"). The constitutional issue within the ineffective assistance claim that this Court has a duty to review

8

is whether there was a manifest necessity for a mistrial on the charge of rape.[4] Whether Kansas law can be interpreted to prevent partial verdicts is not necessarily indicative of whether Mr. Tomlin's Fifth Amendment rights were violated. *See Estelle*, 502 U.S. at 67-68 (concluding it would not evaluate whether evidence was erroneously admitted under state law but analyzed whether admission of that evidence violated defendant's constitutional rights). Thus, the analysis of whether counsel's actions were reasonable in light of prevailing professional norms should include not only an evaluation of counsel's actions according to state law standards as was done by the KCOA, but also their reasonableness in relation to Mr. Tomlin's underlying constitutional claim.

When a claim or argument is not addressed by the state court, AEDPA deference is not warranted because it is not adjudicated on the merits. *Le v. Mullin*, 311 F.3d 1002, 1010-11 (10th Cir. 2002). "When the state courts have not addressed the merits of a specific constitutional claim. . . there is no adjudication of that claim." *Id.* at 1010 (also noting in the corresponding footnote that "when a state court fails to address a petitioner's claim *or argument*, we are left without a state court adjudication of that claim" (emphasis added)). A similar example to Mr. Tomlin's case is found in a 2003 case from this district, *Moss v. McKune*, 258 F.Supp.2d 1168 (D. Kan. 2003). The KCOA had addressed whether evidence was properly

---

[4]  This Court will not interpret matters of purely state law, but it is obligated to review Constitutional claims. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

admitted under state law but "did not take the second step and determine whether Petitioner was thereby denied a fair trial." *Id.* The federal district court reviewed de novo the relevant prosecutor's comment that the petitioner was challenging: "Given that Petitioner raised a federal constitutional issue, but the KCOA addressed the claim only under state law, this Court must review the issue de novo and not under the deferential standard of 28 U.S.C. 2254(d)." *Id.*, citing *Romano v. Gibson*, 239 F.3d 1156, 1164 (10th Cir. 2001) (using de novo review where Oklahoma Court of Appeals addressed the merits of the claim on state grounds but failed to apply the U.S. Supreme Court precedent standard, the court reviewed the claim de novo).[5] In Mr. Tomlin's case, while the KCOA addressed whether the verdict was proper under state law, it did not take the second step to determine whether counsel's actions were reasonable relative to Fifth Amendment jurisprudence.[6] Therefore, this Court will address the manifest necessity, double jeopardy argument de novo because the "merits of [that] specific constitutional" argument were not addressed by the KCOA. *See Le*, 311 F.3d at 1010; *Hooks v. Ward*, 184 F.3d 1206 ("Prior to AEDPA, we reviewed de novo both pure questions of law and mixed questions of law and fact.").

---

[5] Mr. Tomlin's case is similar to *Moss*, despite the KCOA's application of the Supreme Court precedent of *Strickland*. While at first glance it seems the KCOA did evaluate the constitutional argument, the focus here is on the underlying and inter-related claim of whether there was manifest necessity required for retrial under the Fifth Amendment, which was not addressed and the merits of which affect the validity of the ineffective assistance claim.

[6] Even though the KCOA mentioned the state's double jeopardy statute, K.S.A. § 21-3108, in Mr. Tomlin's habeas appeal opinion, it provided no relevant analysis of it.

Because this Court acknowledges the deference inquiry is a close call due to the unique double-layered constitutional argument presented and the KCOA's referenced discussion of *McKay* as relevant to double jeopardy, the Court will subsequently address the alternative of whether the KCOA's decision was contrary to or an unreasonable application of United States Supreme Court precedent under the AEDPA.  The court finds Mr. Tomlin is entitled to relief under either the de novo or deferential standard, although admittedly a closer call under the latter.

2.      **Whether Trial Counsel's Actions were Objectively Unreasonable in Light of Double Jeopardy-Manifest Necessity Case Law**

a.      **De Novo Review**

This issue before the court is a layered one.  First, the outer issue is whether Mr. Tomlin's counsel provided ineffective assistance.  In determining whether counsel acted unreasonably, the first part of the test for ineffectiveness, this Court must look to the second, underlying issue of whether there was manifest necessity to grant a mistrial.  The merits of this claim are relevant to whether counsel's actions were objectively unreasonable when he consented to a mistrial and failed to move to publish a unanimous decision by the jury as a verdict.  Again, while the state court concluded that the prohibition against partial verdicts prevented a final verdict in this case, that is not a firmly established and regularly followed law, so it does not preclude review of the constitutional basis for counsel's potential unreasonableness.  This is the background from which this Court analyzes Mr. Tomlin's ineffective assistance of trial counsel claim.

As to the first issue, Mr. Tomlin must prove that his counsel's actions were objectively unreasonable. The necessary inquiry under *Strickland's* deficient performance prong is "whether, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness." *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002), citing *Strickland*, 466 U.S. at 688. While counsel does not have to raise every conceivable claim, counsel's actions must be reasonable. *Id.* Applied here, while this Court acknowledges Mr. Tomlin's counsel did not necessarily have to raise every potential constitutional argument, it must be evaluated whether when presented with a unanimous agreement of acquittal it was unreasonable for counsel to consent to mistrial instead of moving for a verdict on that charge.

Presumptions in the ineffective assistance analysis articulated by the Tenth Circuit that are typically in counsel's favor do not apply here. The Court "always start[s] the analysis that an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct might have been part of a sound trial strategy." *Bullock*, 297 F.3d at 1046. However, "[a]n attorney's ignorance will affect a court's ineffective assistance of counsel analysis. An attorney's demonstrated ignorance of law directly relevant to a decision will eliminate *Strickland's* presumption that the decision was objectively reasonable because it might have been made for strategic purposes, and it will often prevent the government from claiming that the attorney made an adequately informed strategic choice." *Id.* at 1049. Mr. Tomlin's counsel's consent to mistrial and his failure to move to publish the verdict was clearly not a strategic choice, but rather an oversight or ignorance of the law during the trial. This is obvious

12

in light of the fact that days after the trial, counsel then moved for acquittal on the rape charge.[7] While this eliminates the presumption of objective reasonableness, it does not automatically make the attorney's performance constitutionally inadequate; therefore, Mr. Tomlin's claim is subsequently reviewed. *Id.* at 1051.

Mr. Tomlin must show that his counsel "committed serious errors in light of 'prevailing professional norms." *See Strickland*, 466 U.S. at 688. While the U.S. Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that [t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms," *Wiggins v. Smith*, 539 U.S. 510, (2003), "counsel's decision to ignore [a] substantial body of case law [is] objectively unreasonable and falls below prevailing professional norms." *Williams v. Anderson*, 460 F.3d 789, 800 (6th Cir. 2006). Counsel must not ignore either constitutional or state case and statutory law because both are relevant to what action or inaction are reasonable under those prevailing professional norms.

Ineffective assistance claims based on failure to find existing law or ignoring a body of case law are distinct from those faulting counsel for failing to predict future law. *See, e.g.*, *Bullock*, 297 F.3d at 1052 (distinguishing claims "for failing to find existing law" from "failing to predict future law" in evaluating counsel's reasonableness). The KCOA concluded that Mr.

---

[7] At the habeas hearing in the state trial court, the judge concluded Mr. Tomlin was not entitled to relief. After noting that he thought the habeas was an attempt at a second appeal, he stated, "I presided over the trial, and counsel vigorously pursued every avenue, every witness, cross examination." However, Mr. Tomlin's counsel could have vigorously pursued these avenues as matters of trial strategy and still had an ignorance of the law that caused him to fail to make a motion during jury deliberations that he should have made.

Tomlin's counsel would have had to predict a potential change in Kansas law regarding partial verdicts, so his actions were objectively reasonable.  However, Mr. Tomlin asserts that his counsel only had to apply existing constitutional law regarding "manifest necessity" and the Fifth Amendment double jeopardy clause instead of ignoring this "substantial body of case law." To determine whether counsel's oversight or ignorance of this potentially relevant law in failing to move the court to accept the unanimous agreement as a verdict was reasonable, the merits of the underlying double jeopardy claim must be evaluated.[8]

The Court now addresses the underlying claim of whether there was manifest necessity to declare a mistrial in Mr. Tomlin's first trial, where there was a unanimous jury decision in writing on the rape charge.  This Court must decide the merits of this claim by analyzing whether a retrial on the rape charge was a violation of Mr. Tomlin's right against double jeopardy if

---

[8] The Tenth Circuit does not base its whole conclusion of reasonableness upon a specific decision made by counsel but looks to whether defendant received a fair trial overall. *Bullock*, 297 F.3d at 1049 ("We are satisfied that even if Defense Counsel had been aware of the availability of the lesser included offense [instruction] ..., Counsel's actual representation would still have been within the range of objectively reasonable representation. Consequently, we are of the view that where counsel's representation is objectively reasonable under all the circumstances of a case and ensured that the defendant received a fair trial overall, it makes no difference that certain decisions may have been unreasonable or made without a full recognition of the consequences." (citations and quotations omitted)). While the state trial court judge at the state habeas hearing concluded that counsel acted competently throughout the trial, it is obvious how the failures of counsel surrounding this one event at trial could make Mr. Tomlin's entire trial unfair—the events focus on a major conclusion and entire purpose of a trial, not just smaller, tactical decisions of whether to call a witness, object to an exhibit, or the like.  Therefore, while this Court is mindful of this case law, the Court concludes, as subsequently discussed, that relatively few failures when measured by quantity can and did create an unfair trial overall.

14

counsel would not have consented to mistrial and moved for the court to formally receive the verdict.

No criminal defendant should be forced twice to risk conviction for the same offense based upon the double jeopardy clause.  *See Walck v. Edmondson*, 472 F.3d 1227, 1233 (10th Cir. 2007), quoting *Abney v. United States*, 431 U.S. 651 (1977).  The Clause is applicable to the states through the Fourteenth Amendment, so the standards of double jeopardy as put forth by the U.S. Supreme Court are binding on Kansas state trial courts.  *See Benton*, 395 U.S. at 794-96.  When a trial ends because a jury is deadlocked, the Double Jeopardy Clause of the Fifth Amendment does not bar retrial.  *Illinois v. Somerville*, 410 U.S. 458 (1973), quoting *United States v. Perez*, 22 U.S. (9 Wheat) 579, 580 (1824).  A deadlocked jury does not prohibit a second trial because there is a "manifest necessity" for that mistrial.  *See id.*  To determine whether there is a manifest necessity, however, a court must "tak[e] all circumstances into consideration."  *Id.*  The issue here is when a jury is deadlocked as to one offense in a count, but not the other, is there a manifest necessity for a mistrial of the offense on which agreement has been reached.

The KCOA essentially held that because there was not a unanimous agreement as to every charge in an offense, no verdict was possible.  This is not the view of the Supreme Court in its double jeopardy case law.  In *Green v. United States*, 355 U.S. 184 (1957), the jury found the defendant guilty of second degree murder, which was the lesser included offense in a charge of first degree murder.  *Id.* at 190.  On appeal, the conviction was reversed and the case remanded

for a new trial.  *Id.*  The defendant was tried again for first degree murder even though the original jury refused to find him guilty of that charge.  *Id.*  The Court concluded that the conviction on the lesser offense was an implied acquittal of the greater offense even though no such express statement was made by the jury.  *Id.*

While distinguishable because the jury was not hung on the lesser included offense as it was in Mr. Tomlin's case, this case is important in the evaluation of whether there was a manifest necessity for the trial court judge to declare a mistrial.  The Court discussed that the constitutional protection against double jeopardy should not turn on how charges are listed in an indictment.  "In substance the situation was the same as though Green had been charged with these different offenses in separate but alternative counts of the indictment.  The constitutional issues at stake here should not turn on the fact that both offenses were charged to the jury under one count."  *Id.* at 190, n.10.  "The Supreme Court is clear that a defendant may not be retried after an implied acquittal of *any* offense.  The defining fact is that 'it is a distinct and different offense.'"  *Brazzel v. Washington*, 491 F.3d 976, 982 (9th Cir. 2007), quoting *Green*, 355 U.S. at 191, 194.  "It is immaterial whether second degree murder is a lesser offense included in a

charge of felony murder or not.  The vital thing is that it is a distinct and different offense."[9]

*Green*, 355 U.S. at 194.[10]

      *Green* indicates that where an appeal is taken, a defendant cannot be prosecuted for the greater offense for which he was already acquitted in the conviction of the lesser included offense.  *See also Benton v. Maryland*, 395 U.S. 784 (1969) (holding larceny conviction was a violation of bar against double jeopardy where defendant was acquitted of larceny at first trial, but at retrial was convicted of larceny and burglary).  If Mr. Tomlin had been convicted of

---

     [9] The *Green* court went on to note, "[i]f anything, the fact that it cannot be classified as 'a lesser included offense' . . . buttresses our conclusion . . . where a defendant is charged with two offenses, neither of which is a lesser offense included within the other, and has been found guilty on one but not on the second he cannot be tried again on the second even though he secures reversal of the conviction and even though the two offenses are related offenses charged in the same indictment."  While it says it buttresses the conclusion that it is not classified as a lesser included offense, it does not take away from the emphasized notion that offenses should not be treated differently just because they are found in the same count versus separate counts.

     [10] S*ee also United States v. Gooday* (explaining that greater offenses and lesser included offenses have their own "independent force"); *Andrade v. Superior Court In and For County of Maricopa*, 183 Ariz. 113, 115 (Ariz App. Div. 1 1995) (explaining that the "acquittal of the greater charges unquestionably bars retrial on those charges," but a retrial on lesser included charges on which the jury could not agree is permitted); *Stone v. Superior Court of San Diego County*, 31 Cal.3d 503, 518 (Cal. 1982) ("For the purpose of delineating the scope of the double jeopardy protection, we believe the situation before us to be logically indistinguishable from the case in which a greater offense and a lesser included offense are charged in separate counts.  It would be anomalous to formulate a rule that prevents a trial court from receiving a partial verdict on a greater offense on which the jury clearly favors acquittal merely because the prosecutor elected to charge only that offense. . .In addition to seriously infringing on the defendant's double jeopardy interest in avoiding retrial for offenses on which he has been factually acquitted, such a rule would make his substantive rights turn on the formality of whether he was charged in separate counts with the greater offense and the lesser included offense, or was charged in a single count with only the greater offense.  The Supreme Court flatly rejected such a distinction. . .").

indecent liberties and successfully appealed that conviction, such that it was sent back for retrial, the State could not have prosecuted him for rape in the second trial, even if it had never announced a verdict on that charge in the first trial.  The result should be no different under the constitutional double jeopardy analysis where instead of an appeal that results in a retrial, it is a hung jury as to that lesser offense that requires a retrial.  The retrial should not be expanded in either circumstance to include a charge on which a unanimous agreement of not guilty previously has been reached, whether implicitly as in *Green* or expressly as in Mr. Tomlin's case.  So long as the defendant was originally acquitted on that other greater offense, any retrial of that greater offense should be barred.  "The right not to be placed in jeopardy more than once for the same offense is a vital safeguard in our society. . . If such great constitutional protections are given a narrow, grudging application they are deprived of much of their significance." *Green*, 355 U.S. at 198.  Narrow, strict, mechanical constructions of how an indictment is written should not be permitted to affect a defendant's constitutional rights.

Furthermore, the concern about whether the jury is still in deliberations or has reached a final verdict when looking at a jury's written note is simply not present on these facts.  The jury in no way indicated that this was a compromise.  The writing given to the court around 6:00pm stated, "We have all agreed to not guilty to count one, rape, since 3:00p.m. today."  The jury had clearly divided up the count into the corresponding offenses and made its decisions accordingly.  This is different than if the jury had not indicated any unanimous agreement on rape before being discharged.  *See, e.g.*, *Daniels v. Burt*, 895 F. Supp. 180 (E.D. Mich. 1995)

("The jury simply did not indicate it had reached agreement on any of the offenses on which it was instructed. Had the jury indicated or even suggested that it reached a verdict as to some offenses, the [state] trial judge would have *constitutionally erred* in declaring a mistrial without accepting the jury's partial verdict.") (emphasis added).

In Mr. Tomlin's case, the Kansas trial court judge did not have to derive any information from the jury not already presented, besides the normal inquiry that is required with every verdict. Before a verdict is published or read in open court there is always uncertainty as the jury is free to change their mind from the decision made in the deliberation room, even if decisions are made as to all counts. Therefore, just as the uncertainty of all potential jury verdicts is resolved by reading it in open court, the possible uncertainty in a case such as Mr. Tomlin's could also be resolved by inquiring whether there is a temporary compromise or a final agreement due to the failure of the state to prove that charge beyond a reasonable doubt. Nothing in this opinion should be interpreted to mean a court has an obligation to *sua sponte* inquire into the jury's minds before they have independently reached a unanimous conclusion on a charge, nor is a judge required to alter its conclusion due to evidence discovered after discharging the jury. This Court agrees that "[w]hen reviewing whether or not there was manifest necessity for the mistrial, the Court must only consider the pre-discharge knowledge of the trial judge." *Fitzgerald v. Lile*, 732 F.Supp. 784, 789 (N.D. Ohio 1990). In Mr. Tomlin's case the trial court, prosecution, and defense all knew of the jury's unanimous agreement of not guilty on the charge of rape before the jury was discharged. Mr. Tomlin should not have been

19

forced to undergo another trial and give the prosecution a second bite at the apple when the jury conclusively agreed the state did not prove that charge beyond a reasonable doubt in his first trial, and there was, therefore, no manifest necessity for a mistrial.

Returning to the first prong of *Strickland*, it was objectively unreasonable for counsel to consent to the mistrial and not move to publish the verdict. The very fundamentals of double jeopardy jurisprudence, that there must be manifest necessity to declare a mistrial and be able to retry the defendant, were ignored or overlooked by Mr. Tomlin's counsel. The state trial court did not take *all circumstances* into consideration to assure there was a manifest necessity for a mistrial on the rape offense, and counsel at no time moved to correct these actions. *See generally Hollon v. Ray*, 130 Fed.Appx. 286, 2005 WL 1041375 (10th Cir. 2005) (denying petitioner's certificate of appeal where district court denied the habeas petition after determining that the state court "conducted an 'extensive hearing' and 'made every effort to exercise sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the declaration of a mistrial.'"). Where the jury, on its own initiative produced a writing of a unanimous acquittal on an offense charged, counsel should have moved, under prevailing professional, constitutional norms, to make that decision a formal verdict while the jury was still present and the necessary inquiry could have been made.[11]  Counsel did not act objectively

---

[11] As evidence that reasonable counsel would have moved the court to formally receive such a verdict, the Court turns to counsel's actions described in *Stone v. Superior Court of San Diego County*, 31 Cal.3d 503, 507-08 (Cal. 1982). *Stone* is the case that overturned *Doolittle*, on which the KCOA relied in its opinion affirming the denial of Mr. Tomlin's habeas petition. Counsel in *Stone* was faced with the same scenario that Mr. Tomlin's counsel was faced with – there was prior state case law evidencing the state's prohibition of partial verdicts. Nonetheless, so as to prevent retrial and double jeopardy,

20

reasonably to protect the constitutional rights of Mr. Tomlin where there was no manifest necessity to declare a mistrial on the charge of rape.

### b. Alternative Evaluation under AEDPA Deference

Under AEDPA deference, a federal court may issue the writ only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Dockins v. Hines*, 374 F.3d 935, 937 (10th Cir. 2004). "Contrary to" means a "federal court may grant habeas relief if the state court (1) arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or (2) decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 364-65 (2000). "Under the unreasonable application clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A]n 'unreasonable application' of Supreme Court precedent occurs when a state court applies the correct rule to specific facts in an objectively unreasonable way." *Id.* "[A] state-court decision also involves an unreasonable application of this Court's precedent if the

---

Stone's counsel moved for the court to receive a formal verdict on two counts that the foreman read into court as having unanimous agreement to acquit. The California Supreme Court eventually agreed with counsel's motion that acquittal should be granted. While one counsel's actions do not necessarily determine the professional norms, it bolsters the conclusion that when presented with a unanimous acquittal, counsel should move the court to formally accept it due to constitutionally based professional norms.

state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Id.* at 407 (O'Connor, J., concurring).[12]  "[S]tate court judgments must be upheld unless, after the closest examination of a state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Id.* at 389.

Both the *Strickland* standard of what is effective assistance of counsel, as well as the requirement of a manifest necessity in the double jeopardy context from *Perez* are clearly established federal law.  This Court holds, in the alternative to its de novo review holdings, that *Strickland* was applied unreasonably in light of other Supreme Court precedent, and the state court was unreasonable in refusing to extend the double jeopardy prohibition in this context. Each is discussed in turn.

The KCOA concluded counsel acted reasonably under *Strickland's* first prong because

---

[12] S*ee also Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (plurality opinion) ("A state determination may be set aside under this standard if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled."); *Kennaugh v. Miller*, 289 F.3d 36 (2d Cir. 2002) ("We believe that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed."); *Wilkerson v. Klem*, 412 F.3d 449, 452 (3d Cir. 2005); *Hawkins v. Alabama*, 318 F.3d 1302 (11th Cir. 2003) ("[T]he state court-to acquire AEDPA's protection-is not required to predict that the Supreme Court might widen its rule if the Supreme Court were faced with these new and substantially different circumstances. . . . By 'substantially different circumstances' we mean differences which objectively reasonable judges could believe might make a difference on whether or not the Supreme Court's preexisting decisional principles laid down in one set of circumstances would apply to the new circumstances.  We stress that not every factual difference between a Supreme Court precedent and the case before a state court would carry the state case beyond the borders of the Supreme Court's decisional principle.").

he should not have to predict a potential change in Kansas law, stating "[t]he Sixth Amendment does not set the bar for trial counsel's performance so high." Under the KCOA's view, counsel would have had to predict abolition of the prohibition on partial verdicts to make meritorious the actions that Mr. Tomlin alleges his counsel should have taken.  It often is true, as stated by the KCOA, that counsel is not required to predict the law.  This Court does not disagree.  Counsel is required, however, to know existing law, *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986), which includes both relevant state and constitutional law, as previously discussed.  The KCOA set the bar too low for counsel by not addressing his reasonableness under constitutional standards, resulting in an unreasonable application of *Strickland*.

Mr. Tomlin's counsel waited until after the jury was discharged to move for a judgment based on the jury note.  There is no reasonable strategy in counsel waiting, and as the KCOA noted on the direct appeal, the standard to evaluate that motion changed as a result of the delay. Reasonable counsel would have, upon seeing a unanimous agreement for acquittal of his client, moved to publish that verdict and certainly would not have consented to a mistrial.  The unreasonableness of this is demonstrated not only through counsel's subsequent actions in making the exact same request Mr. Tomlin alleges he should have made, but also the statements of the KCOA on direct appeal that Mr. Tomlin's counsel *should have* raised the issue.

The KCOA applied only case law from its state that did not even involve the same facts as Mr. Tomlin's to determine if counsel's actions were reasonable.  The distinguishing factor between *McKay* and Mr. Tomlin's case is that there was no agreement known before the

discharge of the jury in *McKay*.  While a state court is free to interpret its own state law, it is not free to ignore the defendant's constitutional rights.  The KCOA did not take the second step, after analyzing the claim under state law, to evaluate the constitutional ramifications of that prohibition on partial verdicts.

The *Strickland* bar is not set so high as to allow counsel's ignorance or oversight of the law to be effective assistance of counsel.  *See Kimmelman*, 477 U.S. at 385.  The KCOA essentially declared that so long as there was a state case potentially applicable to Mr. Tomlin's, even if not the reason for counsel's initial consent to the mistrial, counsel could disregard any possibly relevant constitutional case law and still be objectively reasonable.  If only state case law was relevant to the professional norms that governed the reasonableness of counsel's actions, much of the constitutional case law would be worthless in any context in which a lawyer failed to raise such a claim.  The defendant's rights guaranteed by the Constitution are not so vulnerable, and counsel should have acted objectively reasonably by moving the court to protect those constitutional rights, particularly since they were outcome determinative on the greatest charged offense.  The KCOA not only incorrectly applied *Strickland* but was objectively unreasonable in its application.  Because this Court holds the decision was an unreasonable application of *Strickland* to these facts, the de novo review conducted above is also adopted here, and Mr. Tomlin is entitled to relief.

It is well established that a mistrial can be declared only in cases of manifest necessity. *Perez*, 22 U.S. (9 Wheat) 579; *United States v. Richardson*, 468 U.S. 317, 324 (1984); *Illinois*

*v. Somerville*, 410 U.S. 458 (1973).  A deadlocked jury meets the manifest necessity standard, so a retrial after a deadlock on an offense does not violate the Double Jeopardy Clause. *Richardson*, 468 U.S. at 324.  Concluding that double jeopardy should not apply in this context, the KCOA ended its reasonableness determination with the prohibition on partial verdicts.  The KCOA determined that because no partial verdict was allowed, the deadlock was applied to all charges in that count even though the jury was only deadlocked on the lesser included charge in the count.

   *United States v. Green*[13] expressly rejected this same distinction.  Constitutional rights, particularly the right against double jeopardy, do not turn on whether the charges are listed within one count or each in a separate count.  *Green* is consistent with the notion often coupled with double jeopardy analysis that no strict mechanical rules should interfere with this right.  By allowing the partial verdict prohibition to interfere with Mr. Tomlin's rights, KCOA unreasonably refused to extend the manifest necessity requirement, particularly in light of the language in *Green*.  Therefore, this situation did not require the KCOA to widen a rule of the Supreme Court as applicable to substantially different circumstances.  *See supra* note 12. Instead, this context fits squarely within the decisions that dictate a mistrial is only necessary where there is a high degree of necessity and the jury is deadlocked on that offense.  The jury, here, was not deadlocked on the offense of rape, and the KCOA should have extended the

---

   [13] The referenced language from *Green* is admittedly dicta, which is why this Court does not declare outright that the KCOA's decision was contrary to this precedent.  The case, however, still is relevant in determining when a state court has unreasonably refused to extend the manifest necessity principle.

manifest necessity principle to apply to these facts and prevent Mr. Tomlin from suffering the consequence of being placed in double jeopardy due to his counsel's actions.

### B. Whether Mr. Tomlin was Prejudiced by Counsel's Actions Under *Strickland's* Second Prong

No deference is given to the state court regarding the second prong of *Strickland* as related to trial counsel because it was never discussed in this context. *See Cargle v. Mullin*, 317 F.3d 1196, 1212 (10th Cir. 2003) ("[A]n adequate assessment of prejudice arising from the ineffectiveness of petitioner's counsel has never been made in the state courts, so we have no state decision to defer to under § 2254(d) on this issue."). While the KCOA addressed prejudice in the context of appellate counsel, the prejudice of trial counsel's failures was not evaluated because the court concluded counsel's actions was reasonable, which ended the inquiry.

Even if counsel's performance is shown to be deficient, Mr. Tomlin must also show prejudice. *Strickland*, 466 U.S. at 694. Petitioner must show "that there is a reasonable probability that but for counsel's unprofessional errors, the result . . . would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* While this is a heavy burden that Mr. Tomlin bears, a reasonable probability is measured by something less than a preponderance of the evidence standard. "*Strickland* . . . specifically rejected the proposition that the defendant had to prove it more likely than not that the outcome would have been altered." *Woodford v. Visciotti*, 537 U.S. 19, 22 (2002). Therefore, there does not have to be absolute certainty, but instead only a reasonable probability,

that counsel's motion to the court to receive the decision as a final verdict would have been accepted.

Reviewing de novo the prejudice prong, particularly in light of the previous discussion of constitutional case law, this Court finds there was at least a reasonable probability that but for counsel's consent and failure to move to publish the verdict, the outcome of the case would have been different. While this Court cannot determine exactly how the state trial court would have treated the claim, that level of certainty is not required. Had counsel moved the court before the jury was discharged, the state trial judge would have been able to supply the missing components to make the verdict final—making it a formal verdict and conducting an inquiry into whether the jurors, in fact, intended that to be final. This certainty, had it been obtained, would have likely distinguished *McKay*; no decision, including *McKay*, before Mr. Tomlin's state collateral appeal was ever based upon such reasoning when a jury had conclusively agreed before the jury was discharged. Distinguishing *McKay* is not even necessary, however, as previously discussed, because with a certain and unanimous agreement from the jurors, there is a reasonable probability that a trial court judge would conclude the prosecutor did not shoulder its burden in proving manifest necessity, under the constitutional requirements, to include the rape charge in the declaration of the mistrial. *See Arizona v. Washington*, 434 U.S. 497, 505 (1978) ("[I]n view of the importance of the right [against double jeopardy], and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest

27

necessity' for any mistrial declared over the objection of the defendant. . . we require a "high

degree" [of necessity] before concluding that a mistrial is appropriate.").

It also cannot be said that the jury's agreement is too speculative or preliminary in nature.

The jury indicated in its note that at the time they communicated with the court, they had been

in unanimous agreement that Mr. Tomlin was not guilty of rape for over three hours.  There was

no indication that this was merely a compromise.  Had counsel moved the court to formally

accept the verdict, there is, again, at least a reasonable probability that the jurors would have

remained in agreement on the rape charge to formalize the verdict, as it had done for the

previous time frame.[14]

To bolster this conclusion, this Court turns to the language of the KCOA on direct appeal.

"Judge Yost [the trial court judge] denied the motion because he did not know to what extent the

note was a compromise between those jurors who thought Tomlin was guilty on everything

versus those who did not want to convict on anything."  *State v. Tomlin* (Case No. 83,638,

Unpublished opinion, issued Dec. 14, 2001).  In essence, the trial court judge received the

request too late to be able to double check the juror's intentions and issue a verdict and had

counsel moved the court before the jury was discharged, this uncertainty would not have been

present.  The KCOA also noted that "Tomlin *correctly filed* the motion for a judgment of

acquittal, but . . . Tomlin *should have filed* his motion before the trial court declared a mistrial."

*Id.* (emphasis added).  In other words, if the verdict could have been finalized, there was, at the

---

[14] *See supra* note 2 discussing *Long v. State*, in which the Kansas court recognized the
potential merit of a writing by a jury as a verdict that was not received as a formal verdict.

very least, a reasonable probability it had merit, which likely is why the court indicated Mr. Tomlin *should have* filed it.  It also explained that Mr. Tomlin did not have a valid double jeopardy claim because the first trial was terminated with Mr. Tomlin's consent, an action which Mr. Tomlin challenges as part of the ineffective assistance claim. *Id.*  Therefore, the KCOA on direct appeal made no mention of a prohibition of partial verdicts, and in fact, referenced that counsel should have filed the motion for judgment of acquittal earlier.  While not conclusive evidence, this further bolsters that there is a reasonable probability that counsel's failures affected the outcome of the case.

Because Mr. Tomlin was convicted of rape, the greater offense, during the second trial, he was sentenced to a number of months greater than if he would have been retried only on the lesser included offense.  Mr. Tomlin was prejudiced by his counsel's actions because there is a reasonable probability that but for counsel's consent to mistrial and failure to move the court to formalize the verdict, the outcome of his trial would have been different.

## III.    Ineffective Assistance of Appellate Counsel

Because this Court grants the writ based upon ineffective assistance of trial counsel, the ineffective assistance of appellate counsel claim need not be addressed.

## IV.    Remedy

"The court shall . . . dispose of the [writ of habeas corpus] matter as law and justice require." 28 U.S.C. § 2243.  "The Supreme Court has . . .emphasized that section 2243 vests a court with 'broad discretion in conditioning a judgment granting habeas relief.'" *Osborn v.*

*Shillinger*, 861 F.2d 612 (10th Cir. 1988), quoting *Hilton v. Braunskill*, 481 U.S. 770 (1987). "The effect of the writ is to vacate the conviction and release the petitioner from custody." *Capps v. Sullivan*, 13 F.3d 350 (10th Cir. 1993). "In this circuit, barring a new trial is a permissible form of judgment. It is a power necessary to protect the purpose of habeas corpus jurisdiction when the error forming the basis for the relief cannot be corrected in further proceedings. For example, when a trial would violate the Double Jeopardy Clause of the Fifth Amendment, barring the trial may be the only remedy for the violation." *Id.*

Mr. Tomlin's petition is granted and his conviction of rape vacated. Therefore, the State is ordered to release Mr. Tomlin from custody, subject to him having completed his sentence on Count 2, and is enjoined from retrying or further prosecuting him on the same charge of rape.

**IT IS THEREFORE ORDERED BY THE COURT THAT** for the reasons stated above, the petition for writ of habeas corpus is now **GRANTED**.

**IT IS SO ORDERED.**

Dated this 25th day of September, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

30